IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| AIMEE L. WILCOX, an individual,<br><br>                    Plaintiff,<br><br><br><br>vs.<br><br><br>CAREER STEP, L.L.C., et al.,<br>                    Defendants. | ORDER and MEMORANDUM DECISION<br><br><br><br><br>Case No. 2:08-CV-998 CW |

This matter is before the court on a motion by Defendants Career Step, L.L.C., Andrea Anaya, Eugene Anaya, Christopher L. Dunn, Celeste Harjehausen, and Marvin D. Loflin's (collectively, "Defendants") to dismiss Plaintiff Aimee Wilcox' unjust enrichment and unfair competition claims (Dkt. No. 11). Also before the court are three other named defendants' motions to "join" in Defendants' motion to the extent that it seeks to dismiss those counts. (Dkt. Nos. 21, 33, and 54.) For the reasons stated below, Defendants' motion to dismiss Ms. Wilcox' unjust enrichment and unfair competition claims is GRANTED. Likewise GRANTED are the motions to "join" Defendants' motion to dismiss those two counts, which, as explained below, the court deems are independent motions to dismiss the unjust enrichment claim against them.

**FACTUAL BACKGROUND**

Because this is a motion to dismiss, the court will assume as true all facts alleged in Ms.

Wilcox's Amended Complaint.[1]  Ms. Wilcox is an expert in the field of medical coding.  In June 2002, she began to develop the Wilcox Medical Coding Training Course (the "Wilcox Course"). The Wilcox Course trains people to become medical coding specialists.  Career Step is an education company that develops and provides online courses.  Ms. Wilcox agreed with Career Step, first orally and later in writing, to give Career Step exclusive marketing and distribution rights to the Wilcox Course.  Ms. Wilcox, in exchange, would receive a five percent royalty on the gross sales of the Wilcox Course, to be paid monthly.  Before forming the agreement with Ms. Wilcox, Career Step's only product was an online medical transcription training course.

As a part of the oral agreement, Ms. Wilcox granted Career Step exclusive marketing and distribution rights to the Wilcox Course.  Further, Ms. Wilcox agreed to develop and create course content on her own schedule, out of her home office, and at her expense.  Ms. Anaya of Career Step also requested that Ms. Wilcox finish the core content of the various educational and training modules of the Wilcox Course so that computer programmers could incorporate the modules onto Career Step's software platform.  Career Step offered Ms. Wilcox a $10,000 completion bonus to be paid when she finished these tasks.

Ms. Wilcox spent approximately 2,500 hours developing and refining the educational and training modules.  She substantially finished this work on the Wilcox Course in December 2002. At that time, Career Step paid Ms. Wilcox $3,000 of the completion bonus.  Before Ms. Wilcox received the remaining portion of the completion bonus, however, Career Step requested that Ms.

---

[1]After these motions were filed, Ms. Wilcox sought and was granted leave to file an Amended Verified Complaint (*See* Dkt Nos. 48, 61 and 95).  The Amended Complaint includes no changes to Counts Three and Four which are at issue on this motion and references herein are to the Amended Complaint for which leave was granted.

Wilcox review, revise, and expand upon two existing training modules created by Ms. Anaya for

Career Step's medical transcription course.  These revised training modules were to be

implemented into the Wilcox Course.  Ms. Anaya and Ms. Wilcox orally agreed that the

copyrights of these two modules would be jointly held by Ms. Wilcox and Career Step.  Career

Step paid the remaining amount of the bonus when Ms. Wilcox completed the Wilcox Course,

including the two new modules, in February 2003.

In March 2003, Career Step offered Ms. Wilcox employment at a monthly base salary of

$3,333 until her royalties exceeded her base monthly salary.  They did not enter a written

employment agreement, agreeing on the terms orally.  Under the employment agreement, Ms.

Wilcox's duties were to provide product support for the Wilcox Course, consult with Career Step

management on marketing strategies, and provide online and telephone support to students

enrolled in the Wilcox Course.

Some time after Ms. Wilcox submitted the Wilcox Course to Career Step, computer

programmers tried to upload Ms. Wilcox's course onto Career Step's software platform.  The

formatting, however, was incompatible.  Ms. Anaya demanded that Ms. Wilcox reformat her

course so that it could be used on Career Step's software platform.

Ms. Wilcox continued to voice concern that the agreement regarding the Wilcox Course

had not yet been put into writing.  Career Step provided a draft written agreement to Ms. Wilcox

in July 2003.  Under the proposed agreement, Ms. Wilcox was obligated to develop and create

course content on her own schedule, out of her home office, and at her expense.  Career Step

would also require Ms. Wilcox to update the curriculum in accordance with changes to laws or

regulations at her own time and expense, and at a minimum of once per year.  To receive

royalties, Ms. Wilcox would be required to provide curriculum updates no later than the end of the first quarter of each year, or ninety days following the publication and release of the current year American Medical Association (AMA) and American Health Information Medical Association (AHIMA) code updates.  Career Step would pay reasonable sums for text and graphic resources, provide editors to review and revise core content of the curriculum at its own expense, and design and develop the online structure of the curriculum.  Career Step would also be responsible for marketing, enrollment, administrative activities, technical support, and incorporating the course online.

　　　To Ms. Wilcox's surprise, the draft agreement contained terms that she had not discussed or orally agreed to with Career Step.  These terms included  provisions that the copyright for the entire Wilcox Course would be jointly held by Ms. Wilcox and Career Step; the ability for each party to assign its interest in the copyright; and a non-competition provision.  Though she had reservations about the terms of the draft agreement, Ms. Anaya presented the draft as a "take it or leave it" deal.  Ms. Wilcox, feeling that she had no bargaining position and having invested time and resources in her efforts, reluctantly signed the agreement on July 23, 2003, but making it effective as of January 1, 2003.  (That agreement is hereinafter called the "Wilcox Course Agreement.")

　　　After Ms. Wilcox and Career Step entered the Wilcox Course Agreement, Career Step proposed two options to Ms. Wilcox to complete the formatting revisions to the Wilcox Course.  First, Ms. Wilcox could continue her employment with Career Step, forfeit her rights to collect royalties, and relinquish all right, title, and interest in the Wilcox Course to Career Step.  Second, she could keep her interest in the Wilcox Course, resign her employment and complete the

formatting at her own time and expense while having the ability to receive loans from Career Step against her future royalties.  Ms. Wilcox chose the second option. After Ms. Wilcox began to work on the formatting revisions, Ms. Anaya imposed new deadlines on Ms. Wilcox to receive loans against future royalties.  Career Step further required Ms. Wilcox to perform her former employee duties without compensation.  Ms. Wilcox asserts that this requirement was specifically prohibited by the Wilcox Course Agreement.

In early 2004, Career Step began to market and distribute the Wilcox Course to colleges and universities.  In March 2004, Career Step rehired Ms. Wilcox, but requested that she provide two additional educational and training modules to qualify the Wilcox Course for certification by AHIMA.  In late 2004, Ms. Wilcox began to question why she had not received any royalties from the sale of the Wilcox Course.  Ms. Wilcox requested a detailed royalty report which she asserts she was entitled to receive under the Wilcox Course Agreement.  Career Step, however, refused to comply.  Upon speaking with a Career Step co-worker,  Ms. Wilcox discovered that Career Step was selling the Wilcox Course to colleges and universities at a sixty percent discount.  Ms. Wilcox also discovered irregularities and errors in payment of her royalties.  Soon after, Career Step told Ms. Wilcox it no longer required her services and terminated her employment effective the end of July 2005.

On February 15, 2006, Ms. Wilcox asserted that Career Step improperly delayed royalty payments and made a written demand for payment.  She further asserted that Career Step breached the Wilcox Course Agreement, starting the agreement's thirty day period for Career Step to "cure" its default.  On March 10, 2006 Career Step sent what it asserted were Ms. Wilcox's royalties for January and February 2006.  Ms. Wilcox disputes that those payments

"cured" the breach.  On March 15, 2006, Career Step sent Ms. Wilcox a letter alleging Ms. Wilcox had breached the Wilcox Course Agreement by not providing course updates in a timely manner.  Career Step also asserted Wilcox's employment at Career Step superceded the agreement and transferred Ms. Wilcox's intellectual property rights to Career Step.  Accordingly, both Ms. Wilcox and Career Step purported to terminate the Wilcox Course Agreement in March 2006.

On August 4, 2008, Ms. Wilcox received a copyright registration from the U.S. Copyright Office for the Wilcox Course.  Nevertheless, Career Step claims that under the Wilcox Course Agreement it continues to hold the rights to the Wilcox Course and it continues to market the course, including selling it to colleges.  On December 30, 2008, Ms. Wilcox brought this action against Career Step, its shareholders, and various named and "Doe" colleges who allegedly purchased the Wilcox Course from Career Step.  Ms. Wilcox alleges copyright infringement, breach of contract, unjust enrichment, unfair competition, fraud in the inducement, intentional interference with contractual and prospective economic relations, and abuse of personal identity. Now before the court is Defendants' motion to dismiss Ms. Wilcox's Third Cause of Action for unjust enrichment and her Fourth Cause of Action for unfair competition.

<u>ANALYSIS</u>

I.  **APPLICABLE LAW**

A.  **Standard for Motion to Dismiss**

Defendants move to dismiss Ms. Wilcox's claims for unjust enrichment and unfair competition pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In determining whether to grant such a motion to dismiss, the court must accept the well-pleaded allegations of

the complaint as true and must construe them in the light most favorable to the Plaintiff.  *See*

*Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991).  Even though the court construes the

complaint as true, the complaint must contain "enough facts to state a claim to relief that is

plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir

2007) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969, 1974 (2007)).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1948 (2009)(citing *Twombly*).

**B.     Equivalency Standard for Copyright Infringement and State Common Law Claims**

A person's rights under a copyright are set forth in 17 U.S.C.A. § 106 of the Copyright

Act of 1973.  When one owns a copyright, one has the exclusive rights: (1) to reproduce the

copyrighted work, (2) to prepare derivative works from the copyrighted work, (3) to distribute

copies of the copyrighted work, and (4) to display the copyrighted work publicly.  *Id.*  The Act

contains a provision preempting state causes of actions as follows:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the
> scope of copyright as specified by section 106 in works of authorship that are fixed in a
> tangible medium of expression and come within the subject matter of copyright as
> specified by sections 102 and 103, whether created before or after that date and whether
> published or unpublished, are governed exclusively by this title.  Thereafter, no person is
> entitled to any such right or equivalent right in any such work under the common law or
> any statutes of any State.

17 U.S.C.A. § 301(a).  *See also Ehat v. Tanner*, 780 F.2d 876, 877 (10th Cir. 1985).

To determine whether a state common law claim is federally preempted by the Act, courts

employ a two part test.  *See Ehat*, 780 F.2d at 878.  A state common law claim is preempted if:

7

"(1) the work is within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. § §

102, 103; and (2) the rights granted under state law are equivalent to any exclusive rights within

the scope of the federal copyright as set out in 17 U.S.C. § 106." *Harolds Stores, Inc. v. Dillards*

*Dept. Stores, Inc.*, 82 F.3d 1533, 1543 (10th Cir. 1996).  A party seeking to show that a state law

claim is not "equivalent" to the rights under the Act must establish that there is an additional

element differentiating the rights under the state law claim from those under the Act.  *See id.*

The court compares the elements of the cause of action, not the facts pled to prove them.  *Id.*  An

element of a state law cause of action only qualifies as "additional" if it is qualitatively different

from "mere copying, preparation of derivative works, performance, distribution, or display."  *Id.*

Defendants argue that Ms. Wilcox's claims of unjust enrichment and unfair competition

should be dismissed because they are preempted by the Copyright Act and because they are

precluded by state law because of the Wilcox Course Agreement.  The court considers these

arguments below.

## II.     MS. WILCOX' UNJUST ENRICHMENT CLAIM IS PREEMPTED.

In her Third Cause of Action, Ms. Wilcox alleges three bases for her unjust enrichment

claim.  First, she alleges that Career Step and the colleges were unjustly enriched by selling the

Wilcox Course between March 2006 and August 2008.  Second, she contends she is entitled to a

share of Career Step's unjustly enhanced business valuation related to Career Step's asserted

ownership of the Wilcox Course.  Third, she asserts that Career Step was unjustly enriched by

2,300 hours of various types of work she performed prior to the termination of the Wilcox

Course Agreement that Career Step was obliged to perform under that agreement.  For the

reasons below, the court concludes that none of these three assertions provides a basis for a valid

claim for unjust enrichment.

**A.     Revenue from the Wilcox Course**

The first type of unjust enrichment alleged by Ms. Wilcox is revenue realized by the Defendants and the colleges from selling the Wilcox Course from March 2006 to August 2008. (As alleged in the complaint, the Wilcox Course Agreement was terminated in March 2006, and Ms. Wilcox obtained a copyright for the Wilcox Course in August 2008.)  Defendants argue that this aspect of Ms. Wilcox' claim is the equivalent of a copyright claim, and is thus preempted. The court agrees.  Under 17 U.S.C. § 106(3), a copyright owner is granted the exclusive right to distribute and sell the copyright-eligible material.  Ms. Wilcox' claim for revenue related to the sale of the Wilcox Course, then, is clearly one within the scope of the Copyright Act for preemption purposes.

Ms. Wilcox's arguments otherwise are unpersuasive.  First, Ms. Wilcox argues that a Utah state unjust enrichment action is not the equivalent of a copyright action.  Many courts, however, including the Second Circuit, have reasoned that an unjust enrichment claim is not qualitatively different than a copyright infringement claim.  *See, e.g., Briarpatch Limited, L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2nd Cir. 2004).  The court agrees with this reasoning. Accordingly, to the extent that Ms. Wilcox' unjust enrichment claim is based only on revenue to the Defendants and the colleges related to the Wilcox Course, it is preempted by the Copyright Act.

Ms. Wilcox also contends that her claim for revenue from the Wilcox course between the relevant dates is not preempted because she had not registered the Wilcox Course copyright during that period.  This argument does not prevail.  On its face, § 301(a) does not exclude from

9

preemption claims based upon materials that may receive copyright protection but are not registered.  As stated in *H.W. Wilson Co. v. National Library Serv. Co.*, 402 F. Supp. 456, 458-59 (D.C.N.Y. 1975), "[t]he failure to meet the required standards for federal protection will not negate federal preemption.  Otherwise non-compliance with the conditions to limited federal protection could lead to a more unlimited form of state protection.  This must surely be contrary to congressional intent." (quoting 1 Nimmer on Copyright § 1.2 at 6.1 (1975)).  In the absence of Tenth Circuit precedent otherwise, this reasoning is persuasive here.

**B.     Career Step's Purchase Offer**

Ms. Wilcox' second asserted basis for unjust enrichment is the $60 million purchase price offered for Career Step.  The Defendants do not expressly argue that this aspect of Ms. Wilcox' claim is preempted or precluded, and it is not clear whether these arguments would prevail.  The court need not decide that question, however, because this portion of the complaint's unjust enrichment allegations fails to state a claim.  That is, Ms. Wilcox alleges that the purchase offer was unfairly increased by at least $30 million because of Career Step's purported ownership of the rights to the Wilcox Course.  Ms. Wilcox does not, however, allege that any of the $60 million offer was actually received by Career Step or the other Defendants, or that Career Step or the other Defendants otherwise financially benefitted from this offer.  Accordingly, Ms. Wilcox has not plead a benefit accepted or retained by Defendants, which is a key element of an unjust enrichment claim.  *See Desert Miriah, Inc. v. B&L Auto, Inc.*, 12 P.3d 580, 582 (Utah 2000).[2]

---

[2] In Ms. Wilcox' opposition to Defendants' motion, but not in the Amended Complaint, she refers to a $22 million investment in Career Step and argues that her unjust enrichment claim may extend to that money.  Because this is a motion to dismiss, however, the court will consider the complaint's allegations only.

C.      **Ms. Wilcox' Work for Career Step**

The final aspect of Ms. Wilcox unjust enrichment claim is damages for 2,300 hours of

various types of allegedly uncompensated work she performed for Career Step.  Career Step

argues that this claim is precluded by Utah law because the work was covered by the oral

contract and the Wilcox Course Agreement.  As explained below, the court agrees.

Under Utah law, if there is a contract governing certain subject matter, an unjust

enrichment claim seeking recovery related to the same subject matter is precluded.  *TruGreen*

*Cos., L.L.C. v. Mower Brothers*, 199 P.3d 929, 933 (Utah 2008) ("As we have stated previously,

restitution and unjust enrichment are remedies found in quantum meruit.  As tools of equity, they

are used only when no express contract is present.") (citations omitted).  Here, it is clear that Ms.

Wilcox' claim for damages for work she performed for Career Step is encompassed by the

contracts alleged in the complaint.  The work she alleged includes reviewing and revising the

Wilcox Course, rewriting course modules to conform with Career Step's existing software

platform, providing product support and other tasks.

A close read of the Amended Complaint shows that each of these jobs were ones

contemplated by express contracts.  In the Amended Complaint, Ms. Wilcox alleges, in part, as

follows:

> 231.  In addition, WILCOX should be compensated at the salary rate paid while
> and employee of CAREER STEP for her performance of the supplemental employee-
> related tasks that CAREER STEP required of her to be performed while she was not an
> employee and working out of her own home, **which were, in fact, the contractual
> responsibility of CAREER STEP under the Agreement**.

> * * *
> 234.  By requiring WILCOX to nearly completely revise the review and training
> exercises of several of the training modules of the Medical Coding Training Course

11

without compensation, and by requiring WILCOX to perform her former employee duties while making those revisions without an additional compensation and by imposing the foregoing **as a condition precedent to receiving loans against her future royalty payments and allegedly not losing her ownership rights** in the WILCOX Medical Coding Training Course, CAREER STEP was unjustly enriched, all the while intentionally inflicting emotional distress on WILCOX.

(Emphasis added).

These passages make clear that Ms. Wilcox asserts that Career Step required her to complete certain additional tasks for which Career Step refused to pay her. Ms. Wilcox further contends that the additional work Career Step required her to complete was the "contractual responsibility" of Career Step. It must follow therefore that in failing to perform that work, Career Step allegedly breached the contract which made that work Career Step's responsibility. Ms. Wilcox' claim for the value of work completed by Ms. Wilcox to mitigate damage that would have been caused by Career Step's alleged breach is a contract claim.

Similarly, Ms. Wilcox alleges that Career Step imposed as a "condition precedent" to her receiving the loans and other benefits for which she had contracted that she perform duties she had previously performed as an employee without additional compensation. If, as alleged, Career Step imposed duties on Ms. Wilcox that were not part of her contractual duties in order for her to receive the benefits of the contract, that too is a breach of contract claim, not an unjust enrichment claim.

Further, Ms. Wilcox' assertion that she was "required" to perform these additional duties is by itself conceptually inconsistent with an unjust enrichment claim. Ms. Wilcox may have conferred the benefits of the additional work on Career Step with the expectation that she would be compensated, but the basis for that expectation was the contractual obligations Ms. Wilcox

contends were owed to her by Career Step.  The only ability Career Step had to require the alleged additional work by Ms. Wilcox was her contractual obligations to Career Step, or at least, her interest in preserving her contractual rights.  Such claims sound in contract, not in tort.

Ms. Wilcox argues that her unjust enrichment claim should stand because the court may find that the express contracts in this case were void *ab initio*.  While the court could not find any Utah state cases directly on point, courts in this district have answered this question of Utah law at least twice before.  In *Anapoell v. American Express Business Fin. Corp.*, 2:07-cv-198 TC, 2007 WL 4270548, *6 (D. Utah Nov. 30, 2007) and *digEcor, Inc. v. e.Digital Corp.*, 2:06-cv-437 TS, 2007 WL 185477, *4 (D. Utah Jan. 19, 2007), the courts both concluded that unjust enrichment claims are precluded by express contracts even if the claims are plead in the alternative.  This court believes these cases are persuasive here.

For all of these reasons, Defendants' motion to dismiss Ms. Wilcox's unjust enrichment claim is granted.

## III.    MS. WILCOX' UNFAIR COMPETITION CLAIM IS PREEMPTED.

Ms. Wilcox' unfair competition claim is, for the most part, based on her allegation that Career Step is causing confusion in the marketplace by falsely leading the public to believe that Career Step is authorized to distribute the Wilcox Course.[3]  At its core, Ms. Wilcox' assertion that Career Step's continuing distribution of the Wilcox Course is alone the basis for the unfair competition – any perception by the market flows from that distribution.  Courts regularly find this type of unfair competition claim to be preempted by the Copyright Act.  *See*, *e.g.*, *Ehat*, 780

---

[3] Ms. Wilcox also appears to assert in her brief that Career Step's efforts in state court to enforce its asserted copyrights could be considered as part of this claim.  This argument will not be considered here because it is not part of Ms. Wilcox's complaint.

F.2d at 879-80, and *Kindergartners Count, Inc. v. Demoulin*., 171 F. Supp. 2d 1183, 1191 (D.

Kan. 2001).  The reasoning behind cases such as these is that in when a right protected by the

Copyright Act is the core of the claim and the unfair competition elements relate directly to the

protected right, the claim is preempted.  Based on the reasoning of these cases, Ms. Wilcox'

claim is preempted to the extent that it is based on Career Step's distribution of the Wilcox

Course.[4]

   One aspect of Ms. Wilcox' unfair competition claim, however, requires further analysis.

That is, as part of her claim, Ms. Wilcox asserts that Career Step includes her name and

credentials in its promotional materials for the Wilcox Course without her permission.  Ms.

Wilcox alleges that this use of her identity creates confusion among the public that she endorses

Career Step.  Ms. Wilcox asserts that this part of the claim is not preempted because she must

prove the extra element of "passing off."  As explained below, this argument fails because even

if Ms. Wilcox is correct as a legal matter, she has failed to plead a "passing off" claim in the

Amended Complaint.

   Under Utah common law, unfair competition includes, but is not limited to "passing off,

palming off, imitating, and causing or likely causing confusion or deception."  *Overstock.com,

Inc. v. Smartbargains, Inc.*, 192 P.3d 858, 862-863 (Utah 2008) (citations omitted).  Ms. Wilcox

appears correct that "passing off" is an extra element that would distinguishes her claim from a

---

[4] Ms. Wilcox also argues, without citing any authority, that a Utah unfair competition claim can be based on various grounds, such as fraud, tortious interference, and other unfair practices.  She argues that these grounds are extra elements of the state law claim that prevent preemption.  Because there is no authority for the proposition that an unfair competition claim under Utah law may include fraud, tortious interference, or other practices, the court gives this argument no weight.

copyright claim.  *See*, *e.g.*, *Kindergartners Count*, 171 F. Supp. 2d at 1191 ("Claims that allege a false designation of origin via 'passing off' are not asserting rights equivalent to those protected by copyright and therefore do not encounter preemption."), citing *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 231, 247 (S.D.N.Y. 2000).  But Ms. Wilcox has not stated a Utah state law claim for "passing off."

In *Overstock.com* the Utah Supreme Court explained "passing off" as follows: "Unfair competition consists in passing off or attempting to pass off, upon the public, the goods or business of one person as and for the goods or business of another"  192 P.3d at 863 (quoting *Beard v. Board of Educ.*, 151 P.2d 900, 902 (Utah 1932).  In this case, Ms. Wilcox does not allege that Career Step is passing off the Wilcox Course as a course written by Career Step, but rather that Career Step is truthfully attributing the authorship of the course to Ms. Wilcox.  Ms. Wilcox complains that it is unfair competition for Career Step to use her name in promoting the course she wrote.  In the Amended Complaint, she alleges:

> 239.   CAREER STEP, in unlawfully and willfully copying the WILCOX Medical Coding Training Course and derivative works thereof, and intentionally including Plaintiff's name in its promotional materials associated with the Course, created a likelihood of confusion among the public as to the original source of the WILCOX Medical Coding Training Course being allegedly that of CAREER STEP and, consistent therewith, has contributed to the dilution of the distinctive quality of WILCOX's copyrighted work in the marketplace, especially in view of the fact that CAREER STEP did not receive permission or authorization of WILCOX to use her name or credentials in promoting the infringing distribution of her copyrighted work.

Ms. Wilcox does not deny that she is the author of the Wilcox Course; indeed, she claims to be the author.  Nor does she claim that Career Step has so materially changed her work as to cause disrepute to her or otherwise damage her reputation.  She further alleges that she developed

the course based on her "extensive training and expertise." (Amended Complaint ¶ 35.)  She also

alleges that she entered a contract with Career Step under which she to be paid royalties in

exchange for granting to Career Step "the exclusive right to market and distribute the WILCOX

Medical Training Course commencing on January 1, 2003 through December 31, 2013." (*Id.* ¶

74.)  To be sure, Ms. Wilcox alleges that Career Step has breached that contract and lost its rights

to market and distribute the course.  But alleging that Career Step no longer has the right to use

the course is significantly different that alleging that Career Step is passing off the Wilcox

Course as its own work.

Moreover, it is well established that a party with the right to use a copyrighted work also

has the right to attribute the authorship to the true author of the work.  Nimmer on Copyright, a

leading treatise on copyright law, summarizes the law in this area as follows: "In the absence of

contractual provisions to the contrary, an author ordinarily may not object to the use of his name

in connection with a work, when such use consists simply of a truthful statement either that he is

the author of such work, or that the work is 'based on' or 'derived from' the author's work."

Nimmer on Copyright, § 8D.03[B][2] (2009) (citations omitted).  Ms. Wilcox does not allege

that Career Step is making false statements about her authorship or the work or that Career

Statement is demeaning her work or her credentials.  Indeed, it appears that it is Career Step's

truthful representation that she did author the work and that she is an expert that she is

complaining about.  She argues that by using her name Career Step is creating a likelihood of

confusion among the public and has contributed to the "dilution of the distinctive quality of

WILCOX's copyrighted work." (Amended Complaint ¶ 239.)  True statements attributing

authorship and true statements about the author are not sufficient to state a claim for unfair

16

competition.  *See, e.g., Playboy Ents., Inc. v. Welles,* 7 F. Supp. 2d 1098 (S.D. Cal. 1998), *aff'd*

*mem.,* 162 F.3d 1169 (9th Cir. 1998).  Thus, Ms. Wilcox fails to assert a tort claim that requires

proof of an additional element that is necessary to avoid it being preempted by the Copyright Act.

Her complaint for unauthorized use of her name again sounds in contract, if at all, not under the

tort of unfair competition.

      *Xerox Corp. v. Apple Computer, Inc*., 734 F. Supp. 1542 (N.D. Cal. 1990), cited by

Career Step, supports the court's conclusions on Ms. Wilcox' unfair competition claim.  In that

case, Xerox brought California state law claims for unfair competition and for unjust enrichment.

*See id.* at 1544.  Specifically, Xerox claimed that Apple's Lisa computer and Macintosh Finder

program copyright registrations were derivatives of Xerox's Star copyrighted material.  *Id.*

Xerox further claimed that by "[c]laiming title to that which actually belongs to Xerox, and by

suing to enforce rights to that which actually belongs to Xerox, Apple has *caused such confusion*

among others in the industry such as to dissuade them from dealing with Xerox."  *Id.* at 1550

(emphasis added).  Under California law, Xerox needed to show that there was a "likelihood of

consumer confusion as to source of sponsorship" to sustain its unfair competition claim.  *Id.*

(citation omitted).  The *Xerox* court explained that to show actionable confusion:

> "[T]he public must be misled into thinking that the defendant's product is actually the
> plaintiff's.  In other words, the defendant must be guilty of 'passing off' his product as the
> plaintiff's.  *Fisher v. Dees,* 794 F.2d 432, 440 (9th Cir. 1986)."

*Id.*  The court concluded that Apple was "passing off" the products as Apple's own product,

which was actually not "passing off" at all under California law, but was "the opposite of

'passing off.'"  *Id.*  Accordingly, the court concluded that the extra element of "passing off" was

not present in Xerox's claim and it was therefore preempted.  *Id.*  In other words, Apple was not

17

passing of a product developed by Apple as being a Xerox product, but had developed a product of its own, albeit derived from Xerox materials.  Claiming title to such a derived product is not passing off.

In this case, Career Step's argument is even stronger than Apple's argument.  Career Step does not claim that it authored the Wilcox Course.  It acknowledges and promotes Ms. Wilcox' authorship.  To state an unfair competition claim under the *Overstock.com* line of cases, Ms. Wilcox would be required to allege the opposite of what she alleges here.  Namely, that Career Step was claiming authorship of the Wilcox Course and confusing the public that the course was not written by Ms. Wilcox.

For all of these reasons, Ms. Wilcox' unfair competition claim fails because it is preempted by the Copyright Act.

## IV.   Other Named Defendants' Motions for Joinder

Defendants Austin Community College (Dkt. No. 21), Laramie County Community College (Dkt. No. 33)[5], and Central Carolina Technical College (Dkt. No. 54) have each filed motions to "join" Defendants' motion to dismiss these counts with respect to the unjust enrichment claim.  These motions, however, were clearly intended to be independent motions to dismiss.

The court does not believe that it would prejudice Ms. Wilcox to treat these motions as independent motions to dismiss, or to decide them in this order.[6]  It is worth noting that Ms.

---

[5] Laramie's motion also moves to dismiss for lack of personal jurisdiction, which will be addressed in a separate order.

[6] All named defendants are warned, however, that from this point on, if they seek some form of relief for themselves, they should not "join" another defendants' motion for that relief

Wilcox substantively responded only to Laramie's "joinder."  However, the same reasoning applies to equally to Austin or Central Carolina. That is, Ms. Wilcox' unjust enrichment claims against Austin, Laramie, and Central Carolina are expressly based on those defendants' sales of the Wilcox Course.  And, as described above, the right to sell copyright eligible material is one protected by the Copyright Act.  Accordingly, the court concludes that her unjust enrichment claim against each of these moving named defendants is federally preempted.  This conclusion would not have been altered even if Ms. Wilcox had responded to Austin and Central Carolina.

**ORDER**

For the reasons set forth above, the court ORDERS as follows:

Career Step's Motion to Dismiss Ms. Wilcox's unjust enrichment and unfair competition claims (Dkt. No. 11) is GRANTED;

Austin Community College's motion for joinder (Dkt. No. 21) is deemed a motion to dismiss Ms. Wilcox' unjust enrichment claim against Austin and is GRANTED;

Laramie County Community College's motion for joinder (Dkt. No. 33), to the extent it joined Defendants' present motion to dismiss, is deemed a motion to dismiss Ms. Wilcox' unjust enrichment claim against Laramie and is GRANTED; and

Central Carolina Technical College's motion for joinder (Dkt. No. 54) is deemed a motion to dismiss Ms. Wilcox' unjust enrichment claim against Central Carolina and is GRANTED.

---

but make independent motions.  Named defendants, may of course, adopt other defendants' arguments in support, but that is a separate concept than joining a motion.

SO ORDERED this 19th day of February, 2010

BY THE COURT:

_____
Clark Waddoups
United States District Judge